# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MUSA IKHARO,<br>    Petitioner,<br><br>vs.<br><br>ATTORNEY GENERAL OF<br>THE UNITED STATES, *et al.*,<br>    Respondents. | Case No. 1:18-cv-385<br><br>Black, J.<br>Bowman, M.J.<br><br>**REPORT AND**<br>**RECOMMENDATION** |

Petitioner, a former United States Immigration and Customs Enforcement (ICE) detainee at the Butler County Jail,[1] has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (*See* Doc. 1). Respondents have filed an answer and motion to dismiss. (Doc. 17). As indicated below, petitioner has filed a second habeas corpus petition, which has been consolidated with this action (Doc. 26) and construed as an amended petition (Doc. 27).

For the reasons stated below, the undersigned recommends that respondents' motion to dismiss be granted and the petition, as amended, be dismissed.

## I. BACKGROUND

Petitioner is a native and citizen of Nigeria. (Doc. 17-2, Hinman Decl. at PageID 85). On or about November 3, 1995, petitioner became a lawful permanent resident of the United States, after an Immigration Judge granted him a suspension of deportation. On or about December 16, 1994, petitioner was convicted of gross sexual imposition of a minor and disseminating harmful matter to a juvenile in violation Ohio Rev. Code §§ 2907.05 and 2907.31.

On October 18, 2002, a notice to appear was issued, charging petitioner as removable from the United States pursuant to Immigration and Nationality Act (INA) §§ 237(a)(2)(A)(ii)

---

[1] As noted below, petitioner has been removed from the United States to Nigeria.

and (iii), based on his convictions of a crime involving moral turpitude and an aggravated felony. (*Id.* at PageID 86). Petitioner was ordered removed on July 18, 2007. In issuing its decision the Immigration Judge found him statutorily ineligible for a waiver of inadmissibility under INA § 212(c). (*Id.* at Ex. 4 at PageID 107–08). Petitioner appealed the decision of the Immigration Judge to the Board of Immigration Appeals (BIA). (*Id.* at PageID 86). On August 18, 2008 his appeal was denied. On August 2, 2010, his petition for review of the BIA's decision was denied by the Sixth Circuit Court of Appeals. Petitioner was removed to Nigeria on October 26, 2010.

On January 10, 2012, the United States Supreme Court vacated the Sixth Circuit's decision. (*Id.* at PageID 87). Petitioner's case was remanded to the Sixth Circuit for further consideration in light of the Supreme Court's holding in *Judulang v. Holder*, 565 U.S. 42 (2011), which determined that BIA's application of INA § 212(c) in the deportation context was arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).[2] (*See* Hinman Decl., Ex. I at PageID 138). By Order issued February 16, 2012, the Sixth Circuit remanded the case to the BIA for reconsideration in light of *Judulang*. (*Id.* at PageID 87). On June 12, 2014, the BIA remanded the proceedings back to an Immigration Judge for consideration of a waiver of inadmissibility. Petitioner was returned to the United States on February 16, 2018 and was detained by ICE during the course of his removal proceedings.

On May 16, 2018, on remand, the Immigration Court held an individual hearing. The Immigration Judge again sustained the aggravated felony charge under INA § 237(a)(2)(A)(iii)

---

[2] In *Judulang*, the Supreme Court summarized the BIA's method of applying § 212(c) as follows:

The BIA's approach, known as the "comparable-grounds" rule, evaluates whether the charged deportation ground has a close analogue in the statute's list of exclusion grounds. If the deportation ground consists of a set of crimes "substantially equivalent" to the set making up an exclusion ground, the alien can seek § 212(c) relief. But if the deportation ground covers different or more or fewer offenses than any exclusion ground, the alien is ineligible for relief, even if the alien's particular offense falls within an exclusion ground.

*Judulang*, at *477.

and denied petitioner a waiver of inadmissibility.[3] (*See id.,* Ex. K at PageID 144). Petitioner was ordered removed to Nigeria pursuant to INA § 237(a)(2)(A)(iii).

Petitioner appealed the removal order to the BIA. On February 25, 2019, petitioner submitted a second habeas corpus petition in this Court, indicating that the BIA affirmed the Immigration Judge's decision on November 5, 2018. *See Ikharo v. Attorney General*, Case No. 1:19-cv-227 (SJD; SKB) (S.D. Ohio Feb. 25, 2019) (Doc. 1 at PageID 32–34). Petitioner has sought review of the decision in the Sixth Circuit Court of Appeals and currently has two cases pending in the Sixth Circuit challenging the denial of his waiver of inadmissibility and his motion to reopen, in which petitioner alleges his attorney provided him with ineffective assistance of counsel in his immigration proceedings. *See Ikharo v. Barr,* Case Nos. 18-4153, 19-3367 (6th Cir. 2019). The undersigned has ordered that the habeas corpus cases in this Court be consolidated—as requested by petitioner —and construed the petition filed in Case No. 1:19-cv-227 as an amended petition in this action. (Doc. 27).

In the original petition, petitioner seeks an Order compelling ICE to comply with ICE policy directive 11061.1, to return him to the status he had prior to his October 26, 2010 removal, and to remedy his alleged unlawful detention. (Doc. 1). According to petitioner, he should not have been taken into custody upon his return to the United States because he was a lawful permanent resident prior to his removal.

Respondents have moved to dismiss the petition. (Doc. 17). According to respondents, there is no need for the Court to enforce ICE policy directive 11061.1 because petitioner remains a lawful permanent resident and the policy authorized petitioner's detention upon his return to

---

[3] The charge that petitioner was removable for having committed a crime of moral turpitude was withdrawn. (*See* Doc. 17-2, Hinman Decl., Ex. K at PageID 144).

the United States. Respondents otherwise contend that petitioner's detention is lawful pending his removal proceedings.

In the amended petition, petitioner claims that the decisions of the Immigration Judge and the BIA on remand are void and unlawful. (Doc. 27). Petitioner claims that because he was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A), he was never lawfully admitted and was ineligible for 212(c) relief or bond. On this basis, he claims that the immigration court and BIA exceeded their authority and that their decisions are void. Petitioner also includes a claim of ineffective assistance of counsel in the amended petition. For relief, he asks this Court to vacate his removal order and to be released from custody.

On April 22, 2019, petitioner submitted a notice of change of address, listing an address in Westerville, Ohio. As of this date, neither the Butler County Jail nor the ICE Online Detainee Locator list petitioner as being in custody.[4] The undersigned notes that petitioner filed two subsequent habeas corpus petitions in this Court, which have also been consolidated in Case No. 1:19-cv-175. On June 10, 2019, in that case, the respondents filed a return of writ supported by an affidavit from Jason Edmister, an ICE Official familiar with petitioner's removal proceedings. Edmister attests that petitioner was removed to Nigeria on or about April 23, 2019. *See Ikharo v. Barr*, Case No. 1:19-cv-175 (S.D. Ohio June 10, 2019) (Doc. 11-1, Edmister Decl. at PageID 95–96).

**II.     OPINION**

Petitioner is not entitled to federal habeas relief. First, as noted above, petitioner requests that the Court order respondents to follow ICE policy directive 11061.1, which states:

> Absent extraordinary circumstances, if an alien who prevails before the U.S. Supreme Court or a U.S. court of appeals was removed while his or her PFR was

---

[4] The ICE Online Detainee Locator was viewed at https://locator.ice.gov. The Butler County Jail roster was viewed at https://butler.miamivalleyjails.org.

4

> pending, ICE will facilitate the alien's return to the United States if either the court's decision restores the alien to lawful permanent resident (LPR) status, or the alien's presence is necessary for continued administrative removal proceedings. ICE will regard the returned alien as having reverted to the immigration status he or she held, if any, prior to the entry of the removal order and may detain the alien upon his or her return to the United States.

(Doc. 17-1, Ex. 1 at PageID 82).[5] However, as argued by respondents, ICE does not dispute that petitioner's status reverted to that of a lawful permanent resident upon his return to the United States. Timothy Hinman, a deportation officer familiar with the immigration proceedings against petitioner, attests that "[p]ursuant to ICE policy on facilitated return, Ikharo is regarded as having reverted to the immigration status he held prior to his original order of removal." (Doc. 17-2, Hinman Decl. at PageID 87).

However, petitioner maintains that because he was a lawful permanent resident prior to his removal, he was improperly returned as a parolee under 8 U.S.C. § 1182(d)(5)(A), treated as an "arriving alien," and detained during his remanded removal proceedings. Petitioner claims that by virtue of being paroled under § 1182, he was ineligible for relief under INA § 212(c). Specifically, petitioner argues that because a parolee under § 1182 is not deemed "admitted" into the United States, he was unable to satisfy INA § 212(c)'s requirement that he be lawfully present in the United States.

As an initial matter, to the extent that petitioner seeks to challenge the discretionary use of parole pursuant to 8 U.S.C. § 1182(d)(5)(A),[6] this Court is without jurisdiction over this

---

[5] Petitioner relies on a 2012 Frequently Asked Question sheet regarding the policy which stated that ICE would not treat lawful permanent residents as arriving aliens upon facilitating their return the United States. (*See* Doc. 18 at PageID 152; 20 at PageID 209). However, the current version of the FAQ sheet accompanying the policy no longer includes this statement. (Viewed at
https://www.ice.gov/sites/default/files/documents/Document/2017/facilitatingReturnLawfullyRemovedAliensFAQ.pdf).

[6] § 1182(d)(A)(5) states that "The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien

5

claim. *See Pouza v. USCIS Miami*, 516 F. App'x 731, 731 (11th Cir. 2013) ("The decision whether to parole an alien into the United States rests within the discretion of the Secretary, 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(a), and that discretionary decision is shielded from judicial review, 8 U.S.C. § 1252(a)(2)(B).").

In any event, although petitioner contends that he was ineligible for bond or § 212(c) relief based upon the use of parole to facilitate his return to the United States, his claim is without merit. As argued by respondents, petitioner was entitled to and provided with a bond hearing. Through counsel, petitioner filed a motion for a bond hearing on August 29, 2018. (Doc. 19 at PageID 182). An immigration judge denied petitioner's motion for bond on September 20, 2018, finding that petitioner posed a flight risk and danger to the community. *See Ikharo v. Barr*, Case No. 1:19-cv-175 (S.D. Ohio June 10, 2019) (Doc. 11-1, Ex. A at PageID 97). Furthermore, with respect to petitioner's request for a 212(c) waiver and as noted by both the BIA and Sixth Circuit,[7] the manner of petitioner's return had no impact on his eligibility for 212(c) relief. In considering petitioner's eligibility for a 212(c) waiver, the immigration judge determined that petitioner was statutorily eligible, but that petitioner did not merit a favorable

---

applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

[7] In the BIA's April 3, 2019 Decision, the BIA addressed petitioner's claim as follows: "The respondent argues that his application for former section 212(c) waiver was denied because he could not prove that he was "admitted" (Motion at 18). However, the respondent was eligible to apply for the former section 212(c) waiver because he had been admitted as a lawful permanent resident in 1993. As noted above, the Immigration Judge denied the respondent's application for former section 212(c) waiver in the exercise of discretion, and the Board upheld this decision. The manner of the respondent's return in March 2018 did not affect the outcome of respondent's case." *Ikharo v. Barr,* Case No. 1:19-cv-175 (S.D. Ohio June 10, 2019) (Doc. 11-1, Ex. C at PageID 110–11).

This Sixth Circuit similarly noted that "the Immigration Judge and the Board did not rely on his status as a parolee to deny him relief, meaning that this issue had no effect on his application for a waiver of inadmissibility" in addressing petitioner's claim in the adjudication of his motion for a stay of removal. *See Ikharo v. Barr*, No. 18-4153 (6th Cir. Mar. 22, 2019) (Doc. 28)).

exercise of discretion.[8] (Doc. 17-2, Ex. K at PageID 144–48) ("in light of the Supreme Court's decision in *Judulang v. Holder*, 565 U.S. [42] (2011), the respondent does appear statutorily eligible for the section 212(c) waiver. The sole remaining issue concerns the exercise of discretion.")). Accordingly, petitioner's claim that he was ineligible for bond or § 212(c) relief by virtue of being paroled under § 1182(d)(5)(A) is without merit.

Furthermore, contrary to petitioner's claim, petitioner was properly considered an arriving alien despite his status as a lawful permanent resident. An "arriving alien" is an "applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1001.1(q). Under 8 U.S.C. § 1101(a)(13)(C), a lawful permanent resident is not considered an arriving alien unless the alien, amongst other factors, (ii) has been absent from the United States for a continuous period in excess of 180 days, or (iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings. In this case, petitioner departed the United States pursuant to a removal order and was absent from the United States for greater than 180 days. As noted above, petitioner was removed from the United States on October 26, 2010 and did not return until February 16, 2018. Accordingly, under § 1101(a)(13)(C)(ii) and (iv), petitioner was properly considered an arriving alien.[9]

---

[8] Specifically, the immigration judge found that "[c]onsidering the serious nature of the respondent's 1994 offense, his unwillingness to accept responsibility for all his criminal misconduct, and his lack of favorable factors to offset his criminal record, the Court concludes that the respondent does not merit a favorable exercise of discretion." *Ikharo,* Case No. 1:19-cv-175 (S.D. Ohio June 10, 2019) (Doc. 11-1 at PageID 108).

[9] Although petitioner cites *Vartelas v. Holder*, 566 U.S. 257 (2012) for the proposition that he was incorrectly deemed an arriving alien (*See* Doc. 1 at PageID 20), his reliance on *Vartelas* is misplaced. In *Vartelas*, the Supreme Court found that 8 U.S.C. § 1101(a)(13)(C)(v)—which required lawful permanent residents to seek admission if they had committed an offense listed in section 1182(a)(2), which include "a crime involving moral turpitude"— could not be retroactively applied to a lawful permanent resident with convictions which pre-date the enactment of the Immigration Reform and Immigrant Responsibility Act (IIRIRA). Under the prior regime, lawful permanent residents were not regarded as making an "entry" upon their return "from innocent, casual, and brief excursion[s] . . . outside this country's borders." *Id.* at 1484 (quoting *Rosenberg v. Fleuti*, 374 U.S. 449, 461–62 (1963)). The *Vartelas* Court found that "§ 1101(a)(13)(C)(v), attached a new disability (denial of reentry) in respect to past events

Petitioner is likewise not entitled to federal habeas relief based on his claim that his detention pending removal was improper. Petitioner's detention during his renewed removal proceedings was authorized by 8 U.S.C. § 1226, which permits the government to detain an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(c)(1)(B) specifically requires that an alien, such as petitioner, who is deportable for having committed an aggravated felony shall be taken into custody during removal proceedings.[10] *See Denmore v. Kim*, 538 U.S. 510, 523–31 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). *See also Jennings v. Rodriguez*, 538 U.S. __, 138 S.Ct. 830, 847 (2018) ("§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is release for witness protection purposes.").

Following the BIA's November 11, 2018 dismissal of his appeal,[11] petitioner was subject to a final removal order and his detention pending removal was governed by 8 U.S.C. § 1231. Under that section, Congress has prescribed that once an alien has been ordered to be removed from the United States, "the Attorney General shall detain the alien" and "remove the alien from

---

(Vartelas' pre-IIRIRA offense, plea and conviction.)," and therefore § 1101(a)(13)(C)(v) could not be retroactively applied to lawful permanent residents with convictions pre-dating IIRIRA. *Id.* at 1484. In this case nothing in the record suggests that petitioner was deemed an arriving alien based upon his prior convictions. As discussed above, petitioner was properly considered an arriving alien based on § 1101(a)(13)(C)(ii) and (iv). Accordingly, his case does not present the retroactivity issue present in *Vartelas*. In any event, even if petitioner's arrival should have been evaluated under prior regime, he would have been required to seek entry upon being returned to the United States because his departure was pursuant to a removal order. *See Fleuti*, 374 U.S. at 452 (noting that the exception for lawful permanent residents does not apply where the persons "departure from the United States was occasioned by deportation proceedings, extradition, or other legal process").

[10] As argued by respondents, 8 U.S.C. § 1225(b)(2)(A) also authorizes the Attorney General to detain an arriving alien for the duration of removal proceedings. *See Jennings v. Rodriguez*, 583 U.S. __, 138 S.Ct. 830, 837 (2017) (noting that aliens covered by § 1225(b)(2) "shall be detained for a [removal] proceeding if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country").

[11] *See, e.g., Jumah v. Napolitano*, No. 13-2458, 2013 WL 2295704, at *2 (D.N.J. May 23, 2013) (noting that the removal-period is triggered on "the date when the order of removal becomes administratively final (that is, appeal to the BIA was either taken and ruled upon, or the time to appeal expired)").

the United States within a period of 90 days." 8 U.S.C. §§ 1231(a)(1)(A) & 1231(a)(2). Title 8 U.S.C. § 1231(a)(6) further provides in relevant part:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the [90-day] removal period. . . .

By its terms, § 1231(a)(6) "applies to three categories of aliens: (1) those ordered removed who are inadmissible under § 1182, (2) those ordered removed who are removable under § 1227(a)(1)(C), § 1227(a)(2), or § 1227(a)(4), and (3) those ordered removed whom the Secretary [of DHS] determines to be either a risk to the community or a flight risk." *Clark v Martinez,* 543 U.S. 371, 377 (2005). In *Zadvydas v. Davis,* 533 U.S. 678 (2001), the Supreme Court interpreted the provision "to authorize the Attorney General (now the Secretary [of DHS]) to detain aliens in the second category only as long as 'reasonably necessary' to remove them from the country." *Clark,* 543 U.S. at 377 (quoting *Zadvydas*, 533 U.S. at 689, 699). The *Zadvydas* Court held that reading § 1231(a)(6) to authorize indefinite detention would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Zadvydas*, 533 U.S. at 690. Therefore, the Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id.* at 682.

In *Zadvydas*, 533 U.S. at 701, the Supreme Court considered the six-month detention of an alien who is subject to removal due to criminal convictions to be presumptively reasonable. The Court then provided the following guidance in addressing detentions that exceed the six-month presumptively reasonable limit:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement

9

grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* The Sixth Circuit has applied *Zadvydas's* reasonableness review to detention under § 1226:

> We hold that the INS may detain *prima facie* removable criminal aliens, without bond, for a reasonable period of time required to initiate and conclude removal proceedings promptly. When actual removal is not reasonably foreseeable, deportable aliens may not be indefinitely detained without a government showing of a "strong special justification," constituting more than a threat to the community, that overbalances the alien's liberty interest. The reasonableness of the length of detention is subject to review by federal courts in habeas proceedings, as stated by *Zadvydas*.

*Ly,* 351 F.3d at 273. However, the Sixth Circuit declined to impose a bright-lined rule in defining a reasonable time limitation for pre-removal detention. *Id.* at 271. The Court instead instructed that "courts must examine the facts of each case, to determine whether there has been unreasonable delay in concluding removal proceedings." *Id.*

In this case, because petitioner was deemed to be removable under § 1227(a)(2), he falls within the second category of aliens eligible for extended detention under § 1231(a)(6). Although petitioner generally contests his prolonged detention, petitioner was removed within the six-month time-period found presumably reasonable under *Zadvydas*.[12] Petitioner has also failed to demonstrate that his detention under § 1226 prior to a final removal order was unreasonably delayed and therefore is not entitled to habeas relief based on his detention pending a final removal order.[13] *See Ly,* 351 F.3d at 273.

---

[12] Petitioner was detained under § 1231 from November 11, 2018 until his removal on or about April 23, 2019.

[13] Petitioner was detained during his removal proceedings for approximately nine months, from his return to the United States on February 16, 2018 until November 11, 2018, upon issuance of a final removal order. *Cf. Sessay v. Hendricks*, No. 12-2667, 2013 WL 4537709, at *3 (D.N.J. Aug. 27, 2013) (collecting cases) (finding pre-removal detention period of thirteen months was not unreasonable).

Furthermore, to the extent that petitioner seeks habeas relief based on a challenge to his physical custody, petitioner's April 23, 2019 removal renders this action moot and deprives the Court of jurisdiction. In the context of a habeas corpus petition, a district court generally lacks jurisdiction over the petition if the petitioner is not in government custody. Therefore, except in limited circumstances not applicable to the case-at-hand,[14] a petitioner's release from custody generally moots a habeas petition. *See Lane v. Williams*, 455 U.S. 624, 631–32 (1982). *See also Novikova v. Prendes*, Case No. 3:06-cv-0039, 2006 WL 1424255, at *2 (N.D. Texas May 24, 2006) (finding that the removal of a petitioner challenging her detention pending removal deprived the district court of jurisdiction to consider the habeas petition); *Felix v. Bureau of Immigration and Customs Enforcement*, No. 3:05-cv-2211, 2007 WL 951452, at *1 (M.D. Pa. Mar. 27, 2007) ("When an alien subject to removal challenges only his detention pending removal, his release pending removal, whether or not conditional, entails no collateral consequences. It renders the petition moot because he has received all the relief he sought and would have been entitled to."); *see also Kahn v. Attorney General*, Case Nos. 1:15-cv-2014, 1:16-cv-85, at *2 (N.D. Ohio May 17, 2016) ("As Petitioner has received his requested relief by being released from custody on an order of supervision, there is no longer an active case or controversy.") (Report and Recommendation), *adopted*, 2016 WL 4009885 (N.D. Ohio June 25, 2016); *Willix v. Holder*, No. 1:11-cv-894, 2012 WL 463830, at *1 (W.D. Mich. Jan 24, 2012) (finding habeas petition moot where petitioner seeking release pending removal is released pursuant to an order of supervision) (Report and Recommendation), *adopted*, 2012 WL 463825 (W.D. Mich. Feb. 13, 2012).

---

[14] Petitioner has not established nor is the undersigned aware of any basis to find that petitioner will suffer future collateral consequences as a result of the detention or that the case is "capable of repetition, yet evading review." *See Spencer v. Kemna*, 523 U.S. 1, 7–8, 17–18 (1998).

11

Finally, to the extent that petitioner claims that his immigration attorney was ineffective or seeks this Court to review and vacate the rulings of the immigration judge and/or BIA, these claims are not properly before this Court. With respect to his ineffective assistance of counsel claim, "[t]he proper avenue for raising ineffective assistance of counsel is by filing a motion to reopen proceedings with the BIA." *Sswajje v. Ashcroft*, 350 F.3d 528, 533 (6th Cir. 2003). *See also Matter of Lozada*, 19 I & N. Dec. 637, 639 (1988). As noted above, petitioner filed a motion to reopen, which was denied by the BIA on April 3, 2019. *See Ikharo v. Barr*, Case No. 1:19-cv-175 (S.D. Ohio June 10, 2019) (Doc. 11-1, Ex. C at PageID 110). Petitioner has appealed the decision to the Sixth Circuit, which remains pending in Case No. 19-3367. This claim is properly before the Sixth Circuit.

Petitioner's request for the Court to vacate the rulings of the immigration courts is also properly before the Sixth Circuit. As noted above, petitioner claims that these decisions are void and requests that the Court "vacate the order removing him from the United States." (Doc. 27). However, to the extent that petitioner seeks to challenge his final order of removal, his sole remedy is to file a petition for review with the Sixth Circuit Court of Appeals.[15] *See Tota-Maharaj v. Holder*, 416 F. App'x 558, 559 (6th Cir. Mar. 25 2011) ("Congress provides this court with exclusive jurisdiction to review a final order of removal."); *Krninova v. Holder*, No. 2:09-cv-577, 2010 WL 1253972, at *1 (S.D. Ohio Mar. 23, 2010) ("jurisdiction to consider any order of removal is vested exclusively in the appropriate court of appeals"). The undersigned notes that petitioner properly sought review of his removal order/denial of his request for 212(c)

---

[15] 8 U.S.C. § 1252(a)(5) states that "a petition for review filed with the appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." Section 1252(b)(9) further states "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."

in the Sixth Circuit, which remains pending in Case No. 18-4153.  Because this Court does not have jurisdiction to consider petitioner's challenges to the rulings of the immigration courts, petitioner is not entitled to federal habeas relief based on this claim.

Accordingly, in sum, having found that petitioner is not entitled to federal habeas corpus relief based on the claims presented in the petition, as amended, the undersigned **RECOMMENDS** that the petition for habeas corpus be **DENIED**.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1, 27) be **DENIED.**

2. A certificate of appealability should not issue because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

    *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MUSA IKHARO,  
    Petitioner,

vs.

ATTORNEY GENERAL OF  
THE UNITED STATES, *et al.*,  
    Respondents.

Case No. 1:18-cv-385

Black, J.  
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).